ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| CALACOSTA CORP.<br><br>Apelada<br><br>v.<br><br>SYNTHESISED, LLC<br><br>Apelante | **KLAN202401131** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2024CV06401<br><br>Sobre: Desahucio Sumario (Por precario) |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 7 de febrero de 2025.

Comparece ante este foro Synthesized, LLC (Synthesized o "parte apelante") y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 10 de diciembre de 2024. Mediante el referido dictamen, el foro primario determinó que procedía el desahucio de la parte apelante. Además, le ordenó a pagar $500.00 por concepto de honorarios de abogado, costas y gastos, más le impuso una fianza en apelación de $3,000.00.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

### I.

El 9 de julio de 2024, Calacostas Corp. (Calacostas o "parte apelada") presentó una *Demanda* de desahucio sumario por precario contra la parte apelante.[1] En esta, alegó que era dueña de una propiedad comercial, ubicada

---

[1] *Demanda*, págs. 9-58 del apéndice del recurso.

en la Calle Calaf, esquina Calle Federico Costas en San Juan, PR y que, el 14 de julio de 2020, Synthesized suscribió un contrato "*Assignment, Assumption and Amendment of Lease*" (Contrato de Arrendamiento) con el anterior arrendatario PR Functional Fitness Corp. No obstante, esbozó que la parte apelante, conforme a dicho contrato asumió, reconoció y se obligó con todos sus términos y condiciones. Indicó que, el Contrato de Arrendamiento tuvo un término de duración de cinco (5) años, contados a partir del 1 de julio de 2019, hasta el 30 de junio de 2024. No obstante, una vez vencido el término le solicitó a Synthesized que abandonara la propiedad, y se habían negado.

El 6 de septiembre de 2024, la parte apelante presentó una *Moción en Cumplimiento de Orden Solicitando Conversión al Procedimiento Ordinario*.[2] En esencia, indicó que el 27 de agosto de 2024, durante la vista de desahucio sumario, solicitó que el caso se convirtiera a un procedimiento ordinario para que pudieran realizar un descubrimiento de prueba cabal. Alegó que, tenía un derecho de retención del inmueble en controversia, hasta tanto la parte apelada le indemnizara las reparaciones realizadas a la propiedad con su consentimiento.

El 20 de septiembre de 2024, Calacostas presentó una *Moción en Cumplimiento de Orden en Oposición a Solicitud de Conversión y Consolidación a Procedimiento Ordinario con el caso SJ2023CV10927*.[3] Adujo que la parte apelante no había presentado evidencia sobre la existencia del alegado consentimiento de su parte, ni de

---

[2] *Moción en Cumplimiento de Orden Solicitando Conversión al Procedimiento Ordinario*, págs. 60-68 del apéndice del recurso.
[3] *Moción en Cumplimiento de Orden en Oposición a Solicitud de Conversión y Consolidación a Procedimiento Ordinario con el caso SJ2023CV10927*, págs. 90-101 del apéndice del recurso.

las mejoras y reparaciones que realizó, sino que eran meras alegaciones para manifestar que tenía un derecho de retención. Añadió que, instó el caso de autos para recuperar su propiedad de un inquilino que no tiene contrato de arrendamiento vigente.

El 24 septiembre de 2024, Synthesized presentó una *Réplica a Moción en Cumplimiento de Orden SUMAC #15*.[4] En síntesis, reiteró su solicitud de convertir el caso de autos a un procedimiento ordinario, y concediera un término para el descubrimiento de prueba.

El 25 de septiembre de 2024, el foro primario notificó una *Orden*,[5] mediante la cual dispuso lo siguiente:

> Luego de evaluado los escritos, se declara **No Ha Lugar** la Moción en Cumplimiento de Orden Solicitando Conversión al Procedimiento Ordinario radicada por la Demandada. La reclamación de cobro de dinero por alegadas mejoras a la propiedad se está dilucidando en el caso SJ2023CV10927 y en este caso, no se ha presentado prueba alguna sobre el consentimiento de la parte demandante y los gastos alegadamente incurridos por el demandado. **Se mantiene el caso de desahucio sumario y se señala el juicio en su fondo para el 15 de octubre de 2024 a las 10:00 am mediante videoconferencia.** (Énfasis en el original).

En desacuerdo, el 10 de octubre de 2024, Synthesized presentó una *Moción de Reconsideración*.[6] En esencia, sostuvo que está reclamando un derecho de retención, y solicitud de un procedimiento ordinario para descubrir toda la prueba que existe, no para solicitar el pago de las reparaciones.

---

[4] *Réplica a Moción en Cumplimiento de Orden SUMAC #15*, págs. 107-108 del apéndice del recurso.
[5] *Orden*, pág. 109 del apéndice del recurso.
[6] *Moción de Reconsideración*, págs. 110-134 del apéndice del recurso.

No obstante, el 11 de octubre de 2024, el foro primario mediante *Orden*,[7] denegó la moción de reconsideración. A su vez, indicó que "[a]ún cuando el procedimiento de desahucio se mantenga por la vía sumaria, la parte demandada podrá presentar prueba sobre su defensa afirmativa." Las partes tendrían cinco (5) días para cursarse toda la prueba documental que fueran a utilizar en el juicio.

Así las cosas, el 29 de octubre de 2024, fue celebrado el primer día del *Juicio en su Fondo*, en el cual declararon los testigos de la parte apelada.[8] Según surge de la *Minuta*, el foro primario expresó lo siguiente:

> Durante este proceso, el Tribunal nuevamente señala que en este caso sólo se atenderá la defensa afirmativa del derecho de retención por el hecho de realizar mejoras a la propiedad luego de haber sido consentidas por el titular o conforme al contrato de arrendamiento. El hecho de si hubo o no hubo filtraciones, o si las reparaciones fueron ineficientes, no son pertinentes para dicha defensa afirmativa. Para efectos de la parte demandada, se hace constar que el Tribunal da por hecho de que hubo filtraciones, y que se hicieron unos arreglos, no obstante, los arreglos antes mencionados, no fueron efectivos. Esto para agilizar este proceso en este caso y atender lo que está en controversia. El Tribunal no está haciendo adjudicación alguna sobre ninguna clase de filtración. Esa no es la controversia. La controversia es si hay un derecho de retención por parte del demandado. Esta declaración se hace por el interés de la parte demandada de presentar unos videos.

El 22 de noviembre de 2024, fue celebrado el segundo día del *Juicio en su Fondo*, en el cual declararon los testigos de la parte apelante.[9] De igual forma, el foro primario reiteró que cualquier incumplimiento que

---

[7] *Orden*, pág. 135 del apéndice del recurso.
[8] *Minuta*, págs. 287-289 del apéndice del recurso.
[9] *Minuta*, págs. 290-291 del apéndice del recurso.

hubiera tenido la parte apelada por concepto de mejoras, se estaba dilucidando en otro caso, por lo que, no estaría haciendo adjudicaciones sobre ello, sino sobre la defensa de retención.

Luego de las vistas sobre el desahucio, el 10 de diciembre de 2024, el foro primario notificó la *Sentencia* apelada.[10] Mediante esta, declaró *Ha Lugar* la *Demanda*, como consecuencia, ordenó a la parte apelante a desalojar la propiedad ocupada. A su vez, le ordenó a pagar $500.00 por concepto de honorarios de abogado y costas y gastos. Además, le impuso una fianza en apelación de $3,000.00.

En la *Sentencia*, el foro *a quo* formuló las siguientes determinaciones de hechos:

1. Calacostas, Corp. (en adelante Calacostas o demandante) es una corporación creada y organizada en conformidad con las leyes del Estado Libre Asociado de Puerto Rico, representada por su Presidente, Oscar Juelle Abello (en adelante señor Juelle).

2. Synthesized, LLC. (en adelante Synthesized o demandada) es una compañía de responsabilidad limitada creada en conformidad con las leyes del Estado Libre Asociado de Puerto Rico, representada por su Presidente, Ricardo Andrés Prado Del Valle.

3. El señor Oscar Juelle Feo es Vicepresidente de Consolidated Shopping Centers Inc., corporación que funge como "Property Manager" de Calacostas.

4. Calacostas es dueña de una propiedad comercial localizada en la calle Calaf, esquina Federico Costas, San Juan P.R. 00918.

5. Calacostas y Synthesized suscribieron un "Assignment, Assumption and Amendment of Lease" (en adelante "Assignment") el 14 de julio de 2020. Conforme al Assignment, Synthesized como cesionaria, asumió, reconoció y se obligó con todos los términos y condiciones de un contrato de arrendamiento formalizado el 5 de septiembre de 2018 entre Calacostas y el arrendatario anterior, PR Functional Fitness Corp. (en adelante "Lease Agreement"). PR Functional Fitness Corp.,

---

[10] *Sentencia*, págs. 1-8 del apéndice del recurso.

como arrendatario cedente, suscribió, a su vez, el Assignment.

6. Que conforme al Assignment suscrito entre las partes, Synthesized se convirtió en arrendataria de Calacostas ocupando el local comercial identificado como el espacio número tres (3) dentro de la propiedad comercial de Calacostas.

7. El término del Lease Agreement fue de cinco años, vencederos el 30 de junio de 2024.

8. De acuerdo a la prueba testifical del señor Juelle Abello, él, como representante de Calacostas Corp., nunca consintió a que Synthesized realizara reparaciones o mejoras en la propiedad arrendada. El señor Juelle Abello declaró que no hubo consentimiento ni verbal, ni por escrito para que Synthesized realizara mejoras o reparaciones en la propiedad.

9. Calacostas contrató a dos compañías para realizar reparaciones en el techo del edificio en donde se encuentra el local arrendado a Synthesized. Calacostas fue la que pagó por los servicios de reparación del techo.

10. Calacostas realizó pagos mediante cheque realizados y pagaderos a las compañías Duraseal Roofing y Sunlife Waterproofing Corp. para la reparación del techo de la propiedad de Calacostas. El señor Juelle Abello testificó haber firmado los cheques en representación de Calacostas, Corp.

11. De acuerdo a la prueba testifical del señor Juelle Feo, como Vicepresidente de Consolidated Shopping Centers, Inc., compañía que le daba servicios a Calacostas de "property management", este atendía todos los asuntos de gerencia relacionados con los locales comerciales de Calacostas. Dentro de sus funciones se encontraba el mantenimiento, supervisión y reparaciones de la propiedad, así como gestiones de cobro con los inquilinos de Calacostas y asegurarse que se cumplieran con los términos y condiciones de los contratos de arrendamiento.

12. El señor Juelle Feo declaró haber tenido comunicaciones verbales y por escrito con el señor Prado Del Valle durante el término de arrendamiento de Synthesized. Que sus comunicaciones se concentraban en gestiones de cobro, cumplimiento con cláusulas contractuales, así como notificaciones de parte de Synthesized sobre mejoras y reparaciones que requería la propiedad arrendada.

13. De acuerdo a la prueba testifical del señor Juelle Feo, dentro de sus funciones de "property manager" de Calacostas Corp., nunca consintió a que Synthesized realizara

reparaciones o mejoras en la propiedad arrendada. El señor Juelle Feo declaró que no hubo consentimiento ni verbal, ni por escrito, para que Synthesized realizara mejoras o reparaciones en la propiedad.

14. De acuerdo con la prueba testifical del señor Prado Del Valle, la mayor parte de sus comunicaciones con Calacostas se hacían a través del señor Juelle Feo de manera verbal.

15. El señor Prado Del Valle declaró que para temas de urgencia las comunicaciones con personal de Calacostas se hacían mayormente por escrito o por mensajes de voz utilizando la aplicación de WhatsApp.

16. El señor Prado Del Valle presentó evidencia documental de correos electrónicos con el señor Juelle Feo sobre notificaciones de daños a su propiedad por liqueos y filtraciones provenientes del techo. Las comunicaciones incluían una solicitud de parte del señor Prado Del Valle al señor Juelle Feo para que Calacostas realizara las reparaciones necesarias en la propiedad.

17. Synthesized no solicitó por escrito consentimiento de Calacostas para que Synthesized realizara las reparaciones.

18. Synthesized no recibió por escrito de parte de Calacostas consentimiento para que Synthesized realizara las reparaciones.

19. El señor Prado Del Valle declaró que el consentimiento de Calacostas para que Synthesized realizara las reparaciones y mejoras provino del señor Juelle Feo de manera verbal al hacer expresiones que "sobre la marcha se iba a trabajar".

20. El señor Prado del Valle en todo momento declaro que el asumió las reparaciones y que se vio obligado a ello, ya que la parte demandante no las realizaba.

21. No hubo de parte de Calacostas una confirmación por escrito de consentimiento dirigida a Synthesized para que Synthesized realizara las reparaciones.

22. No hubo de parte de Synthesized una confirmación por escrito de consentimiento dirigida a Calacostas indicando que Synthesized realizaría las reparaciones.

23. El correo electrónico con fecha del 31 de julio de 2023, enviado por el señor Prado Del Valle al señor Juelle Feo no hace mención o referencia a consentimientos de parte de Calacostas a Synthesized para que Synthesized realizara reparaciones o mejoras en la propiedad.

24. El correo electrónico con fecha del 2 de agosto de 2023, enviado por el señor Juelle Feo al señor Prado Del Valle no hace mención o referencia a consentimientos de parte de Calacostas a Synthesized para que Synthesized realizara reparaciones o mejoras en la propiedad.

25. El correo electrónico con fecha del 3 de agosto de 2023, enviado por el señor Prado Del Valle al señor Juelle Feo no hace mención o referencia a consentimientos de parte de Calacostas a Synthesized para que Synthesized realizara reparaciones o mejoras en la propiedad.

26. La sección 21, en la página 21, del Lease Agreement titulada "Legal Costs" establece en lo pertinente: "*Lessee shall pay all of Lessor's costs, charges and expenses, including court costs and attorney's fees, incurred by Lessor in any action brought by Lessee in which Lessor is the prevailing party, or incurred by Lessor in any litigation, negotiation or transaction in which Lessee causes Lessor, without Lessor's fault, to become involved or concerned. In any other action between Lessor and Lessee with respect to this Lease, the non-prevailing party shall pay the reasonable costs, charges and expenses, including, without limitation, court costs and attorney's fees, of the prevailing party*".

En vista de las determinaciones de hechos formuladas, el foro primario determinó que la parte apelante no logró demostrar que hubo consentimiento expreso de la parte apelada para que realizaran las reparaciones necesarias en la propiedad, para que fueran considerados edificantes de buena fe y tuvieran el derecho de retención. Por ello, ordenó a que desalojaran en el término de cinco (5) días el local comercial propiedad de Calacostas.

El 12 de diciembre de 2024, la parte apelada presentó un *Memorando de Costas*.[11] En el cual, solicitó que, en adición a los $500.00 por concepto de honorarios que previamente ordenó el Tribunal, ordenara a la parte apelante a pagar $730.00 por concepto de costas y gastos.

---

[11] *Memorando de Costas*, págs. 15-16 del apéndice del recurso en oposición.

En la misma fecha, Synthesized presentó una *Moción Urgente Solicitando Reducción de Fianza en Apelación*.[12] Alegó que, el caso de autos no era uno donde estuvieran reclamando el cobro de cánones pendientes, puesto que, para ello está el caso núm. SJ2023CV10927. Así pues, sostuvo que los posibles daños y perjuicios a los que pudiera enfrentarse la parte apelada están protegidos en el caso instado en la otra sala.

El 13 de diciembre de 2024, Calacostas presentó su oposición a la reducción de fianza en apelación.[13] Arguyó que, reducir la fianza en apelación frustraría su propósito, puesto que, una apelación "mantendría congelado el libre uso de la propiedad de la compareciente mientras se dilucida la misma." Por ello, solicitó que el foro primario denegara la reducción de fianza en apelación.

Así pues, en la misma fecha, el foro primario emitió una *Orden* denegando la solicitud de la parte apelante para reducir la fianza en apelación.[14]

Aún inconformes, Synthesized recurrió ante este foro revisor mediante el recurso que nos ocupa y adujo que el foro primario incurrió en los siguientes errores:

> Erró el Honorable TPI al denegar la conversión del caso al procedimiento ordinario.
>
> Erró el Honorable TPI en su análisis del derecho de retención de la apelante y limitar la prueba que podía presentar la apelante a esos fines.
>
> Erró el Honorable TPI al imponer el pago de honorarios de abogado contractuales a pesar de no haber sido solicitados por la apelada en su Demanda.

---

[12] *Moción Urgente Solicitando Reducción de Fianza en Apelación*, págs. 292-293 del apéndice del recurso.
[13] *Moción en Oposición a Solicitud de Reducción de Fianza en Apelación,* págs. 17-19 del apéndice del recurso.
[14] *Orden*, pág. 294 del apéndice del recurso.

> Erró el Honorable TPI al imponer una fianza en apelación en la suma de $3,000.00.

El 14 de enero de 2025 emitimos una *Resolución*, en la cual le concedimos a la parte apelada el término dispuesto en el Reglamento de este Tribunal, para presentar su alegato en oposición. En cumplimiento, el 15 de enero de 2025, Calacostas presentó su alegato.

Con el beneficio de la comparecencia de ambas partes, procederemos a resolver.

## II.

### -A-

Nuestro Tribunal Supremo ha expresado en torno al desahucio que, este es "el mecanismo que tiene el dueño o la dueña de un inmueble para recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna." *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020); *Payano v. SLG Cruz-Pagán*, 209 DPR 876 (2022). El desahucio puede ser solicitado mediante un proceso sumario u ordinario. *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018). El procedimiento de desahucio sumario está reglamentado por los Artículos 620-634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838. *Íd.*; *Payano v. SLG Cruz-Pagán*, supra; *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 9 (2016). Esta reglamentación responde al interés del Estado en atender expeditamente la reclamación del dueño de un inmueble, cuyo derecho a poseer y disfrutar su propiedad ha sido interrumpido. *Íd.*; *Cooperativa v. Colón Lebrón*, supra, pág. 820; *Adm. Vivienda Pública v. Vega Martínez,* supra, pág. 240. El objetivo de la acción de desahucio es recuperar la

posesión de hecho de un bien inmueble. *ATPR v. SLG Volmar-Mathieu*, supra, pág. 10. Según el Artículo 620 del Código de Enjuiciamiento Civil, las personas que pueden instar una acción de desahucio son los dueños de la finca, sus apoderados, los usufructuarios o cualquier otro que tenga derecho a disfrutarla y sus causahabientes. 32 LPRA sec. 2821.

El Código de Enjuiciamiento Civil es el cuerpo legal que articula las normas vigentes sobre esta acción. 32 LPRA 2821, *et seq.* Con relación al proceso de apelación de un desahucio, la *Ley de Desahucio* contiene un procedimiento especial. *Acosta et al. v. SLG Ghigliotti*, 186 DPR 984, 989 (2012).

El procedimiento sumario de desahucio está reglamentado en los Artículos 620 a 634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838. Es preciso señalar que, mediante la Ley Núm. 86-2011, se enmendó el Artículo 629 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2831, con el fin de reducir el término para apelar una sentencia de desahucio. Dicho artículo dispone específicamente lo siguiente:

> Las apelaciones deberán interponerse en el término de cinco (5) días contados desde la fecha del archivo en autos de la notificación de la sentencia, por las partes perjudicadas por la misma o sus abogados.

En el antes citado estatuto, el legislador plasmó su clara intención en la *Exposición de Motivos*, que en su parte pertinente dispone:

> Las personas que optan por ofrecer sus viviendas para alquiler son selectivas en el proceso, con el fin de minimizar su riesgo como arrendador. A manera de ejemplo, una de las principales quejas de éstos es que el trámite de desahucio resulta muy extenso en los tribunales, debido a, entre otras cosas, constantes suspensiones,

lo que resulta en consecuencias desfavorables para el arrendador. Ley Núm. 86-2011, *supra*.

Como bien se puede apreciar, el término jurisdiccional de treinta (30) días para apelar las determinaciones de los tribunales de primera instancia se redujo en la nueva ley a cinco (5) días.

Así, la sentencia de desahucio, de conformidad con el Artículo 630 del Código de Enjuiciamiento Civil, es final y firme al expirar el término de cinco (5) días desde que se notifica la misma a los demandados. *González v. López*, 69 DPR 944, 947 (1949).

Por otro lado, el Tribunal Supremo de Puerto Rico en *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 241 (1992), señaló que la necesidad de que ocasionalmente el procedimiento sumario de desahucio se convierta en uno ordinario, no podía llevarlo a configurar una regla automática. A fin de cuentas, dentro del marco procesal sumario de la *Ley de Desahucio*, el sano discernimiento judicial será la guía para prorrogar términos, posponer señalamientos y permitir enmiendas a las alegaciones.

En consonancia con lo anterior, [p]uesto que lo único que se busca recobrar [en la acción de desahucio] es la posesión, nuestro Tribunal Supremo ha expresado en "reiteradas ocasiones que en la acción sumaria debe limitarse la concurrencia o consolidación de otras acciones o defensas. Por ello, cuando el demandado presenta otras defensas afirmativas relacionadas con la acción de desahucio, éste puede solicitar que el procedimiento se convierta al trámite ordinario." *Jiménez v. Reyes*, 146 DPR 657 (1998); *Mora Dev. Corp. v.*

*Sandín*, 118 DPR 733, 747-748 (1987); *ATPR v. SLG Volmar-Mathieu,* supra, pág. 10.

Ahora bien, con relación a las defensas que pueden ser planteadas por la parte demandada, nuestra última instancia judicial ha reconocido que bajo la *Ley de Desahucio* estas "deberán ser alegadas oportunamente por el arrendatario, de manera que no dilate innecesariamente los procedimientos. Esta casuística arroja una sola conclusión: una vez esgrimidas estas defensas, el juzgador deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario." *Turabo Ltd. Partnership v. Velardo Ortiz,* supra, págs. 245-246.

Pertinente a la controversia que nos ocupa, es meritorio señalar que, desde tiempos inmemoriales, nuestra última instancia judicial ha puntualizado que en el trámite sumario deben considerarse estrictamente la recuperación de la posesión material en los casos determinados por ley. Sobre este particular, en *Fernández & Hno. V. Pérez*, 79 DPR 244, 247-248 (1956) el Tribunal Supremo de Puerto Rico señaló que:

> La única función del procedimiento de naturaleza sumaria que establece la ley para el desahucio es recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna. El beneficio de la economía y rapidez del trámite sumario se perdería si la acción no queda restringida a la consideración y resolución de la cuestión estricta para la que se ha creado: la recuperación de la posesión material en los casos determinados por la ley. De ahí que el tratamiento de todos los demás derechos y cuestiones accesorias o colaterales sólo corresponde a la acción ordinaria y que el único pronunciamiento en la sentencia de desahucio es si procede o no ordenar el desalojo.

Por último, [e]s doctrina general establecida por nuestro más Alto Foro, que los conflictos de título no pueden dilucidarse en el juicio de desahucio por ser este uno de carácter sumario en que únicamente se trata de recobrar la posesión de un inmueble por quien tiene derecho a ella. A tono con tal doctrina si un demandado en desahucio produce prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el del demandante surge un conflicto de título que hace improcedente la acción de desahucio. Tal conflicto, debe ser dilucidado en el juicio declarativo correspondiente; pero no se debe extender este principio a casos en que no hay posibilidad de título en favor de la parte demandada. (Citas omitidas). *C.R.U.V. v. Román,* 100 DPR 318, 321, 322 (1971).

**-B-**

En nuestro ordenamiento jurídico, la concesión de costas en el litigio está gobernada por la Regla 44.1 de las de Procedimiento Civil. 32 LPRA Ap. V, R. 44.1. En lo pertinente, ésta dispone que "le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión […]". *Íd.* De acuerdo con la norma procesal, el criterio para que el tribunal decida cuáles partidas de las costas solicitadas concede, es que se trate de los "gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra." *Íd.*

La Regla también establece el procedimiento que se debe seguir para conceder las costas. En particular, el inciso (b) dispone que la parte reclamante tiene el término de diez (10) días, contados a partir de la notificación de la sentencia que le favorece, para presentar al tribunal, y notificar a la parte contraria, un memorando de costas." 32 LPRA Ap. V, R. 44.1. El referido término de diez (10) días es de naturaleza jurisdiccional, tanto para presentar el memorando de costas como para notificar el mismo. *Rosario Domínguez v. ELA,* 198 DPR 197 (2017*); Comisionado v. Presidenta*, 166 DPR 513, 518 (2005). La naturaleza jurisdiccional del término para presentar y notificar un memorando de costas surge en virtud de la Regla 68.2 de Procedimiento Civil. 32 LPRA Ap. V, R. 68.2. Por lo cual, este plazo es improrrogable y su cumplimiento tardío priva al tribunal de autoridad para considerar y aprobar las costas reclamadas. *Rosario Domínguez v. ELA*, supra.

Por último, la Regla 44.1 señala en el inciso (d), que en caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que corresponde a tal conducta. Aunque el concepto temeridad no está expresamente definido por la Regla 44.1 (d) de Procedimiento Civil, se trata de una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713 (1987).

El propósito de este mecanismo es penalizar al que con su conducta ha obligado a la parte adversa en un

litigio a incurrir en gastos y con ello le ha causado innecesariamente molestias e inconvenientes. *SLG Flores-Jiménez v. Colberg*, 173 DPR 843, 867 (2008); *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). La imposición del pago de honorarios de abogado, de conformidad con la Regla 44.1, *supra*, depende de que el tribunal haga una determinación de temeridad.

Por último, "[l]a determinación de si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador". *Raoca Plumbing v. Trans World*, 114 DPR 464, 468 (1983). El tribunal impondrá la cuantía que el juzgador entienda que corresponde a la conducta temeraria. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013); citando a *Andamios de PR v. Newport Bonding*, 179 DPR 503, 519-520 (2010). Los criterios a evaluar al determinar si una parte litigante incurrió en temeridad son: (1) el grado de temeridad desplegada durante el litigio; (2) la naturaleza del procedimiento judicial; (3) los esfuerzos y la actividad profesional ejercida en el litigio; (4) la habilidad y reputación de los abogados. *Asociación de Condóminos v. Trelles Reyes*, 120 DPR 574, 579 (1988).

Cónsono con lo anterior, reconocemos que de ordinario el ejercicio de las facultades discrecionales por el foro de primera instancia merece nuestra deferencia. Como corolario de lo anterior, sólo intervendremos con el ejercicio de dicha discreción en aquellas situaciones en que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma

procesal o de derecho sustantivo. *Rivera Durán v. Banco Popular*, 152 DPR 140 (2000).

## III.

En el caso de autos, Synthesized recurre ante este Foro haciendo varios señalamientos de error. En esencia, impugna la determinación del foro primario al declarar *Ha Lugar* la *Demanda* instada por Calacostas y ordenar a desalojar la propiedad ocupada, mediante la *Sentencia* del 10 de diciembre de 2024.

En su primer señalamiento de error, el apelante arguye que incidió el foro primario al denegar la conversión del caso a un procedimiento ordinario. En respecto a esto, surge del expediente apelativo que el 11 de octubre de 2024 el foro primario emitió una *Orden* en la cual denegó la reconsideración instada por Synthesized para convertir el caso a un procedimiento ordinario. El apelante no recurrió de dicho dictamen en ese momento. Sin embargo, el tribunal no abusó de su discreción al denegar la conversión a un tramite regular. Esa discreción fue bien ejercida ante la naturaleza de este tipo de caso, las controversias presentes en ese momento y la intención legislativa de que estos procesos sean de carácter sumario.. Consecuentemente, no se cometió el error señalado.

De otra parte, en su segundo señalamiento de error, Synthesized sostiene que no procedía el desahucio, pues entiende que ostenta el derecho de retención hasta que le brinden un crédito por las mejoras realizadas a la propiedad. A tales efectos, expuso en su recurso que:

> [r]espetuosamente sometemos que el TPI no podía limitar su análisis del derecho de retención a conocer si la apelada consintió a las reparaciones, en abstracción del resto de los componentes de la defensa. En su lugar, debía analizar en conjunto todos los elementos detrás

de la defensa de retención, según reconoció en su propia *Orden* anterior cuando denegó la conversión del caso el procedimiento ordinario. Es por ello que el TPI erró al no permitir evidencia sobre la naturaleza de las reparaciones (*i.e.,* si eran urgentes, necesarias o meramente de lujo), su magnitud y cómo el no realizarlas incidía en que el local pudiera utilizarse para los fines que fue arrendado, así como el tiempo que estuvo la apelante esperando a que la apelada realizará las mismas, su negatividad a realizarlas y su eventual consentimiento a que entonces la realizara la apelada. Luego, entonces procedía recibir y entender la prueba relacionada al costo de las reparaciones realizadas por la apelante, de modo que pudiera establecer que procedía un crédito a su favor y el valor del mismo, aunque no se ordenara su pago en dicho caso.

Por su parte, Calacostas indica que las partes tuvieron la oportunidad para someter toda la prueba documental que pudieran utilizar en el juicio. Añade que, en efecto, el foro primario limitó la prueba al aspecto de la defensa de retención para ver si procedía o no, el desahucio de manera sumaria. Arguye que, la controversia sobre si hubo o no filtraciones o si las reparaciones fueron ineficientes, se están atendiendo en el caso ordinario sobre cobro de dinero e incumplimiento de contrato, SJ2023CV10927.

Luego de examinar los argumentos esbozados por las partes, no se desprende que Synthesized haya desfilado prueba ante el foro primario sobre que realizara las alegadas mejoras en la propiedad con el consentimiento de Calacostas. Cabe señalar que, el recurso ante nuestra consideración quedó sometido sin el beneficio de una transcripción de la prueba oral, por lo que desconocemos si ante el foro apelado fue invocada la alegación de que la parte apelante es un edificante de buena fe y si desfiló prueba para sostener tales alegaciones.

Así pues, conforme surge del expediente, el foro primario luego de observar, escuchar y apreciar el

comportamiento de las partes concluyó que la única controversia era si aplicaba la defensa del derecho de retención por el hecho de realizar mejoras a la propiedad en controversia, luego de alegadamente ser consentidas por el titular o conforme al contrato de arrendamiento. Según la *Sentencia* apelada, Calacostas no dio su consentimiento expreso a Synthesized para que realizara las mejoras y reparaciones en la propiedad. Al contrario, el foro apelado concluyó que la prueba documental demostró que la parte apelante realizó reparaciones a su costo ante la falta de respuesta y acción de los apelados. En virtud de lo anterior, el foro *a quo* declaró *Ha Lugar* la demanda sobre desahucio y ordenó a Synthesized a desalojar el local comercial.

En el presente caso el foro apelado aquilató los testimonios vertidos por ambas partes en la vista en su fondo, emitió *Sentencia* de conformidad con su apreciación de la prueba y resolvió según el derecho aplicable al cuadro fáctico ante su consideración. En vista de que el dictamen apelado goza de una presunción de corrección y la parte apelante solo descansó en meras alegaciones, lo cual conforme a nuestro ordenamiento jurídico no es suficiente para sustituir el criterio del foro primario, procede su confirmación.

Finalmente, en el tercer y cuarto señalamiento de error, Synthesized alega que erró el foro primario al concederle honorarios de abogado a la parte apelada a pesar de que no los solicitó en su *Demanda*. A su vez, que incidió el foro *a quo* al imponer una fianza en apelación, cuando el caso de autos no versa sobre cánones de arrendamiento.

Por su parte, Calacostas esboza que las partes estipularon el *Contrato de Arrendamiento* antes de comenzar el juicio, y dicho contrato contiene una cláusula de costos legales. Por lo que, la imposición de honorarios contractuales surgen de dicho contrato, el cual fue admitido en evidencia y estipulado por las partes. En cuanto a la fianza en apelación, reiteraron que reducir la fianza frustraría el propósito de su requisito, debido a que, una apelación mantiene congelado el libre uso de la propiedad, provocando daños y perjuicios significativos.

Según indicamos, la Regla 44.1 de Procedimiento Civil, *supra,* establece que se concederán costas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión. La parte victoriosa es aquella a cuyo favor se resuelve una reclamación independiente, a los fines de esa reclamación, aun cuando en el litigio se hayan acumulado otras reclamaciones.

A su vez, las partes contratantes acordaron en el Contrato de Arrendamiento en la cláusula veintiuno (21) titulada "*Legal Cost*", en esencia, que el arrendatario respondería al arrendador cuando en un procedimiento judicial, el arrendador fuera la parte ganadora. A esos efectos, Calacostas presentó una acción de desahucio en contra de Synthesized mediante la cual resultó vencedora, por lo que, debía pagar los costos, cargos, gastos razonables, y honorarios de abogados.

En cuanto al planteamiento sobre la imposición de fianza en apelación, es menester recordar que, es al Tribunal de Primera Instancia a quien le corresponde determinar la cuantía y no a este Foro. *ATPR v. SLG*

*Volmar-Mathieu,* supra, pág. 12. Lo anterior, debido a que, es ante el foro primario que se desfila la prueba necesaria para evaluar de forma completa y precisa el daño que se busca cubrir. *Íd.* Conforme a ello, en el caso de epígrafe, el Tribunal de Primera Instancia razonó que la fianza de apelación que procedía era de $3,000.00. Tampoco encontramos que dicho Tribunal haya abusado de su discreción al imponer esa fianza. Por consiguiente, no nos corresponde modificar la cantidad impuesta por el foro apelado.

A la luz de todo lo anterior, concluimos que no erró el foro primario en ordenar el lanzamiento de la parte apelante y/o de cualquier otra persona que esté ocupando la propiedad. Como tampoco, incidió en imponer el pago de honorarios, costas y gastos.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones